William J. SCOTT and Minnie D. Scott, Plaintiffs,

v.

The GOVERNMENT OF THE DISTRICT OF COLUMBIA, Defendant.

Civ. A. No. 4303–52.

United States District Court, District of Columbia.

Jan. 20, 1955.

758

Albert Brick and Samuel Intrater, Washington, D. C., for plaintiffs.

Vernon E. West, Corp. Counsel, Robert D. Wise and Una Rita Morris, Asst. Corp. Counsel, Washington, D. C., for defendant.

PINE, District Judge.

Plaintiffs, Mr. and Mrs. Scott, have sued the District of Columbia for damages on account of injuries sustained by Mr. Scott. They claim that he fell and was seriously injured while crossing one of its streets.

A jury has found in favor of the plaintiffs, and defendant has moved for judgment n. o. v. In considering this motion, the Court must construe the evidence most favorably to the plaintiffs and give them the full effect of every legitimate inference. If, upon the evidence so construed, reasonable men might differ, the motion should be denied. On the other hand, if no reasonable man could reach a verdict in favor of plaintiffs, the motion should be granted.[1]

The ingredients of their claim are that Mr. Scott was caused to fall by reason of a defective condition in the street, namely a hole, which was not reasonably safe for vehicular traffic and which had existed for a sufficient length of time to give defendant constructive notice thereof. There was no evidence of actual notice.

The accident occurred at about 9:30 p. m., December 18, 1951. Mr. Scott testified that after alighting from a bus at a stop which was between intersections, he proceeded across the street from that point and fell in the street before reaching the adjacent sidewalk.

1. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142; Jackson v. Capital Transit Co., 69 App.D.C. 147, 99 F.2d 380.

There were no witnesses. Snow, sleet, and rain had fallen during the preceding daylight hours. The temperature had hovered around the freezing point. The street was slippery. The District contends that Mr. Scott was caused to fall by reason of the slippery condition of the street for which it would not be responsible, and not by reason of any defect; and there was evidence, principally circumstantial, to support its contention. But Mr. Scott testified that he stepped into a "big" hole; that his heel "hit on the edge of it," and "that is what threw me." That there was a hole was corroborated by Mrs. Scott, who testified that she saw one in the street about an hour after the occurrence. She saw it while searching for his glasses, which had been lost. She gave testimony on which a jury could reasonably conclude that the hole which she described was the one into which Mr. Scott testified that he had stepped.

Applying the foregoing criterion, I conclude the first two ingredients, namely that there was a hole and that plaintiff was caused to fall by reason of it, were questions for the jury.

▮▮▮ As to whether it was unsafe for vehicular traffic, which plaintiffs were required to establish, the jury had the testimony of Mr. Scott, Mrs. Scott, and the Assistant Inspector of Claims for the District. The lastnamed testified that he consulted Mr. Scott after receiving certain "information"; that, among other things, he asked him to point out the place where he fell, and that, agreeable to this request, Mr. Scott pointed out a place where the street had been repaired, and stated that the "hole had been fixed." The Assistant Inspector thereupon had the material used for repair removed, and noted the condition of the street thereafter, taking photographs and making measurements. His testimony and the photographs tend to establish that the condition before repair was not a depression or sunken portion of the street, but a portion of the original street which had worn away, leaving a cavity. Mr. Scott testified that

the hole into which he fell was 18 inches long and 12 inches wide. Mrs. Scott testified that it was about the size of a man's foot and drew a diagram of the hole on the board according to actual size. This depicted a jagged and irregular oval measuring about nine inches by twelve inches. The Assistant Inspector testified that after removing all the patching material, the dimensions of the excavation were 31 by 28 inches at its longest and widest parts. Assuming this is where Mr. Scott fell, some of the area may not have been exposed at that time, because Mrs. Scott testified that the hole was in a place where the pavement previously had been repaired, that some of it had crumbled way, and that a portion of the part repaired remained intact. To be sure, the defendant contends that if this is the place where he fell, it had not been repaired between the date of Mr. Scott's fall and the date of his interview with the Assistant Inspector of Claims, but there was sufficient evidence to justify a conclusion that it was, including, in addition to Mr. Scott's testimony, defendant's Exhibit No. 15 showing a record of repair in this vicinity between these dates.

As to depth, Mrs. Scott testified it was a distinct hole and that, if you "hit" it with your foot, it would go down into it, but she could not give its depth in inches. Mr. Scott testified, as above stated, that it was a "big" hole, and further that it was eight or ten inches deep. The maximum depth shown by the measurements of the Assistant Inspector of that portion remaining after the patching material had been removed was one and one-half inches.

Assuming a hole of the length and breadth given by any of the witnesses and a depth of eight or ten inches, I would have no hesitancy in holding that a decision on whether it was dangerous to vehicular traffic was one for the jury. But the testimony of Mr. Scott as to depth was impeached when, on cross-examination, he stated that his testimony as to depth was a guess, and that he did not remember testifying on direct ex-

amination that the hole was eight or ten inches deep. He testified that his memory had been impaired since the accident, and further on cross-examination that he had no way of "telling" how deep the hole was, and had never looked at it after the accident. In this connection it should be noted that he was advanced in years, and was hospitalized and suffering from the immediate effects of the fall during a large part of the time elapsing before he was asked by the Assistant Inspector to point out the place where he fell. His testimony as to the depth of the hole in inches was therefore severely impaired, but there was other evidence as to depth. For example, there was his testimony that the hole was a "deep" hole; Mrs. Scott's testimony that it was so deep that when you went down in it you would fall; the written statement of Mr. Scott, offered in evidence by defendant and given to the Assistant Inspector about a month after the fall and before impairment of memory, stating that the hole was two to three inches in depth, and the testimony of the Assistant Inspector that the excavated portion of the street, after removing the patching material, was one and one-half inches deep at its deepest point. This evidence, when considered in connection with the testimony as to length and breadth, and construed most favorably to plaintiffs, would be sufficient, in my opinion, to produce a mental picture of a condition on which reasonable men might differ in respect to whether it was safe or unsafe for vehicular traffic. Indeed, so construed, the case comes very close factually to the defect described in Speirs v. District of Columbia, 66 App.D.C. 194, 85 F.2d 693, in which the Court held that the question whether it was safe was for the jury.

▪ As to constructive notice, Mrs. Scott testified the condition she described had existed for several months; and as to contributory negligence, which defendant claims was established as a matter of law, Mr. Scott testified that he had not noticed the condition, although there had been ample opportunity for him so to do. But here again, these were questions for the jury, which was instructed on both points without objection.[2]

I have considered the other points raised by the defendant's motion, and find them to be without merit. Under these circumstances, I conclude that the motion for judgment n. o. v. should be denied.

---

2. Mosheuvel v. District of Columbia, 191 U.S. 247, 24 S.Ct. 57, 48 L.Ed. 170.

See also Lyons v. D. C., 93 U.S.App.D.C. 278, 214 F.2d 203.